UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CRIMINAL ACTION NO. 04-817-MBB


**UNITED STATES OF AMERICA**

**v.**

**NORMAN BARNES**


**MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION**


**MAY 25, 2004**


**BOWLER, Ch.U.S.M.J.**

On or about the evening of April 12, 2004, defendant Norman Barnes (the "defendant"), was arrested based on probable cause. On the following day a Criminal Complaint issued in this district charging that the defendant and four other individuals, Adam Ellard (codefendant "Ellard"), Willie Hester (codefendant "Hester"), Tavon Robinson (codefendant "Robinson") and Steven Tucker (codefendant "Tucker")(collectively the "defendants") did "knowingly and intentionally combine, conspire, confederate, and agree with each other to distribute cocaine base, a Schedule II

controlled substance in violation of Title 21, United States Code, Section 846.

The defendant had his initial appearance before this court on April 13, 2004.  He was represented by court appointed counsel.  The government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community and (2) the appearance of the defendant.  18 U.S.C. §§ 3142 (f)(1)(B),(f)(1)(C) and (f)(2)(A).  The government moved for a three day continuance and by agreement of counsel a detention and probable cause hearing was scheduled before this court on April 26, 2004.

On that date this court commenced a hearing on the issue of detention and probable cause for all of the defendants.  The defendant was represented by court appointed counsel.  The government called one witness speaking to the issue of detention. The defendants did not call any witnesses.  At the conclusion of the testimony the hearing was continued until April 29, 2004, at the request of defense counsel, for the purpose of argument.  On that date this court heard argument.  After making a finding of probable cause this court took the issue of detention under advisement[1].

---

[1]  On April 29, 2004, codefendant Hester entered into a period of voluntary detention without prejudice.  On May 3, 2004, codefendants Ellard, Robinson and Tucker entered into a period of voluntary detention without prejudice.

<u>DISCUSSION</u>

I.   A.   Under the provisions of 18 U.S.C. § 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person."  Thus, a defendant must be released under the provisions of 18 U.S.C. § 3142(b) or (c), or be detained pending trial under the provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant to 18 U.S.C. § 3142(f).  <u>See</u> 18 U.S.C. § 3142(a).

Under 18 U.S.C.§ 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds one of the following three conditions to be true that: (1) by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C.§ 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . .;" (2) by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the appearance of the person as required . . .;" or (3) there is a serious risk the defendant will flee.[2]  This determination is made by the court at

_____

[2] The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f).  In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .."  (Latter emphasis added.)  By not requiring that same standard <u>vis</u> <u>a</u> <u>vis</u> an

the conclusion of a detention hearing.

B.   The government is entitled to move for detention in a case that:

     (1)  involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);[3]

     (2)  involves an offense punishable by death or life imprisonment;

     (3)  involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[4] or

---

assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence--applied.  That is precisely the holding in the Second Circuit.  See e.g., United States v. Jackson, 823 F.D 4, 5 (D.C.Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986), cert. dismissed, 107 S.Ct. 562 (1986); see also United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991).

[3]  Section 3156 of Title 18 of the United States Code defines a crime of violence as:

>      (A)  an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

>      (B)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

[4]  The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines.  See United States v.

(4) involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua</u> <u>sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses.  <u>See</u> 18 U.S.C. § 3142(f).


C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

>    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
>    (2) the weight of the evidence against the accused;
>
>    (3) the history and characteristics of the person, including--
>
>>        (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse,

<u>Moss</u>, 887 F.2d 333, 336-7 (1st Cir. 1989).

criminal history, and record concerning
appearance at court proceedings; and

(B) whether, at the time of the current
offense or arrest, he was on probation, on
parole, or other release pending trial,
sentencing, appeal, or completion of sentence
for an offense under Federal, State or local
law; and

(4) the nature and seriousness of the danger to
any other person or the community that would be
posed by the person's release.

18 U.S.C. § 3142(g).


D.  The burden of persuasion remains with the government to

establish "that no condition or combination of conditions will

reasonably assure the appearance of the person as required and

the safety of any other person and the community."  The burden

then rests on the defendant to come forward with evidence

indicating that these general findings are not applicable to him

for whatever reason advanced.  The government must satisfy its

position with respect to risk of flight by a preponderance of

evidence and with respect to dangerousness by clear and

convincing evidence.  See supra footnote 3.  This court must then

weigh all relevant factors [set forth under §3142(g)] and

determine whether "any condition or combination of conditions

will reasonably assure the appearance of the [defendant] as

required and the safety of any other person and the community."

The decision is an individualized one based on all relevant

6

factors.  United States v. Patriarca, 948 F.2d 789, 794 (

Cir. 1991); see United States v. Jessup, 757 F.2d 378, 387-88

(1st Cir. 1985).

Moreover, one may be considered a danger to the community

even in the absence of a finding by clear and convincing evidence

that the accused will engage in physical violence.  Conversely,

as noted by the Committee on the Judiciary (Report of the

Committee on the Judiciary, United States Senate), on S. 215.

98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's
> dangerousness is described throughout
> this chapter by the term "safety of
> any other person or the community."
> The reference to safety of any other
> person is intended to cover the
> situation in which the safety of a
> particular identifiable individual,
> perhaps a victim or witness, is of
> concern, while the language referring
> to the safety of the community refers
> to the danger that the defendant might
> engage in criminal activity to the
> detriment of the community.  The
> Committee intends that the concern about
> safety be given a broader construction
> than merely danger of harm involving
> physical violence....  The Committee
> also emphasizes that the risk that a
> defendant will continue to engage in
> drug trafficking constitutes a danger to
> the "safety of any other person or the
> community."

Id. (Emphasis added; footnotes omitted); see United States v.

Patriarca, 948 F.2d 789, 792, n.2 (1st Cir. 1991) (danger to

community does not refer only to risk of physical violence); see

7

also United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) (stating danger in context of 18 U.S.C. § 3142(g) not meant to refer only to physical violence); United States v. Hawkins, 617 F.2d 59 (5th Cir.), cert. denied, 449 U.S. 962 (1980) (trafficking in controlled substances).[5]

The issue critical to determining whether to detain a defendant is therefore, whether, with respect to the defendant, based on the guidelines set forth supra in part C of this Order, any condition or combination of conditions of release exist that will reasonably assure the safety of any person and the community; and the presence of the defendant.  18 U.S.C. § 3142(e).

E.    "Where, as here, a defendant is charged with a controlled substance offense punishable by a maximum term of 10 years or more, the government is aided by § 3142(e)'s rebuttable flight presumption."[6]  United States v. Palmer-Contreras, 835

_____

[5] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of moved under 18 U.S.C. § 3142(f)(l), and the judicial officer has determined that a hearing is appropriate under that latter section.  See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

[6] The presumption reflects Congressional findings that persons who deal in drugs often have the necessary resources and foreign ties to escape to other countries.  United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam).  Consequently, imposing "a large bond is often ineffective in deterring flight."  United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).

F.2d 15, 17 (1st Cir. 1987) (per curiam).  The presumption is not limited to risk of flight.  Rather, the presumption has two components.  One component is that the person poses a risk of flight and the second component is that the person "represents a danger to the community."  United States v. Moss, 887 F.2d 333, 335 n.3 (1st Cir. 1989) (per curiam).

Thus, under section 3142(e) the judicial officer must consider the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under 18 U.S.C. § 924(c), the use of a firearm to commit a felony.  18 U.S.C. § 3142(e).

The presumption raised as a result of finding probable cause that a defendant committed the relevant narcotics offense is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under § 3142(g).  The defendant, however, "bears only the burden of production."  United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988).  As explained by the United States Court of Appeals with regard to the statutory

9

presumption of section 3142(e):

> Section 3142(e), however, only imposes a burden of production on a defendant. The burden of persuasion remains with the government. Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but retains evidentiary weight--the amount depending on how closely defendant's case resembles the congressional paradigm, Jessup, 757 F.2d at 387--to be considered along with other factors.

United States v. Palmer-Contreras, 835 F.2d at 17-18; see also, United States v. Perez-Franco, 839 F.2d at 869-70.

Finally, it is important to note that the presumption is triggered by the statutory penalty prescribed irrespective of the actual or likely sentence imposed upon the particular defendant. See United States v. Moss, 887 F.2d 333, 337 (1st Cir. 1989) (per curiam). The fact that a defendant may receive a sentence of less than ten years does not make the presumption inapplicable. Id. at 337. Rather, this court may consider such a factor with regard to the weight this court gives to the presumption. Id. At 337.

II. The defendant, Norman Barnes, is 21 years of age. He was born in Boston on February 22, 1983. He attended school in Boston and dropped out of the McKinley Technical High School in 2002 when he was in the tenth grade. According to the Pretrial Services report, the defendant left school because of an arrest.

The defendant's 39 year old mother, Sophia Barnes, lives in

10

an apartment located at 58 Appleton Street in Brockton.  The defendant's four half siblings, ages 13, 15, 16 and 18, live with their mother.  She subsists on welfare benefits, according to the Pretrial Services report.  One of the defendant's half siblings is on probation in the Brockton District Court, while another is serving a state sentence.  The defendant's father, Norman Foy, lives in Boston at an unknown location.  The defendant is not in contact with his father.

Since October of 2003 the defendant has been living in an apartment at 58 Appleton Street in Brockton with his girlfriend of six months, Penee Wiggins.  An aunt and a cousin of the defendant also live in the apartment.  Prior to moving to Brockton the defendant lived at different addresses in Dorchester and Roxbury with his grandmother.

The defendant is single and has a five year old son.  The child lives with his mother, Tonia Singleton.  The defendant told Pretrial Services that he visits his son on a weekly basis.  The defendant added that when he is able he contributes up to $60 a week toward the child's support.

At the time of his arrest the defendant was unemployed.  His prior employment history includes four weeks at National Tire and Battery in Everett and three weeks at the Wollaston Golf Club, where he was employed as a dishwasher.  The defendant told Pretrial Services that his mother supports him.

The defendant has a prior criminal record. His juvenile record includes a finding of delinquency for credit card misuse, knowingly receiving stolen property and possession of a Class D controlled substance. His adult record indicates convictions for knowingly receiving stolen property, possession of burglarious tools and breaking and entering in the daytime with the intent to commit a felony.

At the present time the defendant has open charges in Suffolk Superior Court for assault with a dangerous weapon, assault with intent to kill, assault and battery with a dangerous weapon, possession of a firearm and possession of ammunition.

While on release in Suffolk Superior Court, the defendant was charged in the Brockton District Court with operating after suspension of license, having a controlled substance in a school zone and possession of a Class D controlled substance with intent to distribute. These charges remain open.

The defendant's criminal history reflects at least four defaults and two probation violations.

III. The relevant evidence at the detention hearing showed the following.

The government called Special Agent Steven C. Story ("Story") of the United States Drug Enforcement Administration ("DEA"). He testified that he has been so employed for the past

12

17 years.  Story noted that for the past year he has been
assigned to DEA's Mobile Enforcement Team, with the
responsibility for investigating drug distribution in the North
Shore area of Greater Boston.

Story testified that in late February and early March of
2004 an ongoing investigation began to focus on codefendant
Ellard.  On March 3, 2004, an undercover law enforcement agent
("UC") purchased 1000 Vicodin tablets from Ellard.  On March 9,
2004, a UC purchased 14 grams of crack cocaine from Ellard.  The
transaction took place near the Home Depot in Dorchester.  A
third sale was negotiated for April 12, 2004.  The third sale was
to involve two ounces of crack cocaine at a cost of $1,175 per
ounce for a total of $2,350.  The transaction was to take place
in Dorchester.

In further testimony Story testified that on April 12, 2004,
the UC who negotiated the deal had several telephone calls with
Ellard.  A plan was finalized that the transaction would occur in
the parking lot near the Bickford's restaurant on Route 93 south,
near the South Bay Shopping Center in the Dorchester section of
Boston.

Story stated that around 5:00 p.m. the UC arrived in the
parking lot.  Ellard called to say he was "running late."  He
told the UC to wait for him.  Eventually Ellard arrived in a
black Honda Civic driven by codefendant Hester.  The car pulled

13

into the parking lot along with a silver Ford Focus driven by codefendant Robinson.  Codefendant Tucker was seated in the front passenger seat and the defendant was seated in the rear seat. Hester parked the Civic.  The Ford Focus was parked next to the Civic but facing in the opposite direction.

According to Story, Ellard exited the Civic and entered the UC's vehicle.  There were extended negotiations over the terms of the drug purchase.  The UC showed Ellard the purchase money, which had been previously negotiated.  Ellard told the UC that the money needed to be "fronted."  The UC said that he did not want to front the money.  Then Ellard exited from the UC's vehicle and walked over to the Ford Focus, where he appeared to have a conversation with the occupants of the vehicle.

In further testimony Story explained that Ellard then proceeded back to the UC's car.  Ellard told the UC to back up his vehicle into a position adjacent to the Ford Focus.  Ellard said that he still needed to take the money to the Ford Focus and the UC continued to refuse to front the money.  Ellard then proceeded back to the Ford Focus again.

Story testified that a few minutes later Robinson exited from the Ford Focus.  He opened the hood of the car slightly before walking over to the UC's car.  Robinson then put a package with the crack cocaine on the front seat of the UC's car.  The UC then paid Robinson $2,350, the agreed upon amount of the purchase

14

money.

Within moments the arrest signal was given.  Robinson fled on foot toward the Bickford's restaurant and Ellard fled in the opposite direction toward a gasoline station.  Both were apprehended.  The other three individuals, who were divided between the two vehicles and included the defendant, were arrested.

Story was shown a document which he identified as a copy of his affidavit in support of the Criminal Complaint in the above-captioned case.  It was admitted as Government Exhibit # 1. Story noted that it is fair and accurate with the exception that in paragraph 14 on page four the defendant is misidentified as "Nelson" Barnes instead of Norman Barnes.

In further testimony Story stated that the two cars, the Honda Civic and the Ford Focus, were examined.  Two weapons were found under the hood of the Ford Focus.  A blue neoprene ski mask and a box of latex gloves were found in the back seat of the same vehicle.

According to Government Exhibit # 1, two loaded firearms were found wrapped inside a white T-shirt in the engine block of the Ford Focus.  The first weapon was a loaded Ruger, Model P89, 9mm. semiautomatic pistol.  The second weapon was a Lorcin 9mm. semiautomatic pistol loaded with hollow point ammunition.  The latter weapon was reported stolen in Newport, North Carolina in

November of 2003.

A search of the Honda Civic revealed a loaded 25mm. Raven semiautomatic pistol in the backside pocket of the front seat of the car. Story, who viewed the vehicle, noted that it would be possible for the driver to reach into the backside pocket, where the gun was located, from the driver's seat.

Story noted that the Ford Focus was rented on April 8, 2004 at the Manchester, New Hampshire airport by Cleo Mercer, Tucker's sister. Story added that when the vehicle arrived at the scene Robinson was driving and Tucker was in the front passenger seat.

In further testimony Story noted that all five defendants were searched at the arrest scene. Robinson was found to have all $2,350 of the serialized "buy money" on his person plus small amounts of crack cocaine and marijuana. The other defendants were not found to be carrying any contraband.

On cross examination by counsel for the defendant it was established that there were seven or eight law enforcement vehicles parked on the perimeter of the Bickford's parking lot prior to the meeting, which took place at about 7:30 p.m.

Story testified that the Ford Focus was moved to the Boston Police Department's Old Colony station in South Boston, where a search was conducted 45 to 50 minutes later. The search was conducted without a search warrant under the motor vehicle exception, Story noted.

16

On further cross examination Story reiterated that no contraband was found on the defendant's person.  Story added that he was aware of documentary evidence found in the Honda Civic relating to the defendant.

On redirect examination it was established that the documentary evidence found in the Honda Civic included documents with the defendant's name and address on them.

At the conclusion of the testimony the government offered an additional document, which was admitted as Government Exhibit # 3[7].  The document is a copy of a criminal complaint from the Brockton District Court relating to a November 29, 2003 arrest of the defendant, which resulted in him being charged with possession with intent to distribute a Class D controlled substance, a drug violation near a school or a park and operating a motor vehicle after suspension of license.  The vehicular charge appears to be civil motor vehicle infraction.

On May 11, 2004, after the close of the testimony this court received a hand written letter, dated April 30, 2004, from Penee Wiggins ("Ms. Wiggins").  Although not marked as a detention hearing exhibit, the letter has been docketed (Docket Entry # 17) and will be considered by this court.  Ms. Wiggins is identified in the Pretrial Services report as the defendant's girlfriend of

_____

[7]  Government Exhibit # 2 relates to codefendant Robinson and is not relevant to this court's determination on the issue of defendant's detention.

17

six months.  In her letter Ms. Wiggins asks this court to release
the defendant on a "monitoring device."  Referring to the
defendant, Ms. Wiggins states, "He shows up at every required
court date . . . ."

IV.  The United States has moved for detention pursuant to 18
U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A).  The government must prove
by clear and convincing evidence that if released the defendant
would pose a serious danger to any person or the community.  In
contradistinction, the government must demonstrate only by a
preponderance of evidence that the defendant, if released,
constitutes a serious risk of flight or failure to appear.  The
two different standards are used because of the clear language
expressed in the last paragraph of 18 U.S.C. § 3142(f) which
states "that no condition or combination of conditions will
reasonably assure the safety of any other person and the
community shall be supported by clear and convincing evidence."
Congress, by not attaching that language to the risk of flight
clause, infers that a lower standard of proof is all that is
necessary to establish the government's case.

    A. <u>Danger to the Community</u>

    This court first addresses the likelihood that the
defendant, if released, would be a danger to another person or

18

the community.

The defendant, while on release from two courts, was present at a prearranged drug deal.  He arrived in the car that brought the cocaine to the location and was present in the car during conversations leading up to the actual transfer of the cocaine to the UC.  The car the defendant was traveling in had two loaded firearms concealed under the hood.

While defendant's precise role in the transaction is not clear, it is not the practice of drug dealers to bring innocent spectators along to what was clearly not a casual drug deal but a prearranged "buy" of $2,350 worth of cocaine.  The facts suggest that the defendant was a trusted confederate.

The pending Suffolk and Brockton cases strongly suggest that the defendant is unable to stay away from guns and drugs.  The facts giving rise to the present charge combine these two elements.  It is clear that the defendant is unable to abide by conditions of release to refrain from gun and drug related behavior and therefore he constitutes a danger to the community.

The defendant did not proffer any credible evidence to detract from the government's assertion that he has committed a serious drug crime involving a narcotic drug and that he is a danger to the community or any person.  This court finds by clear and convincing evidence that there is no condition or combination of conditions that will assure the safety of any person or the

19

community if the defendant is released.

    B. <u>Risk of Flight</u>

    Next, this court turns to risk of flight or failure to appear.

    Although the defendant has been a lifelong resident of the Boston area, he appears to have been living a somewhat itinerant life style.  For the six months prior to his arrest the defendant was living in Brockton with his 19 year old girlfriend, an aunt and a cousin.  Prior to moving to Brockton he lived at various addresses in Dorchester and Roxbury with his grandmother.

    The defendant's employment history is minimal.  It includes a four week period in one job and a three week interval in another job.  By his own admission to Pretrial Services the defendant is supported by his 39 year old mother, who has four other children.  The defendant himself is the father of a five year old child.

    The defendant's criminal history reflects four defaults and two probation violations.  It would appear that Ms. Wiggins is unaware of the defendant's record of defaults.  At the time of the incident giving rise to the present offense the defendant was on release from two separate courts, the Suffolk Superior Court where he faces serious charges including assault to kill and possession of a firearm and ammunition and the Brockton District

Court, where he faces a drug charge.  This strongly suggests that the defendant cannot abide by conditions of release and that he cannot be relied upon to appear as required.

Based on the totality of the circumstances this court finds by a preponderance of the evidence that there is no condition or combination of conditions that will assure the appearance of the defendant as required.


V. <u>Conclusion</u>

The government has satisfied this court by clear and convincing evidence that no condition or combination of conditions of release (set forth under 18 U.S.C.§ 3142(b) or (c)) will reasonably assure the safety of any other person or the community if the defendant is released.  In addition, this court has found, at least by a preponderance of the evidence, that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the following conditions:

> (1)  The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2)  The defendant be afforded reasonable opportunity for private consultation with his counsel; and

(3)  On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to an authorized Deputy U.S. Marshal for the purpose of any appearance in connection with a court proceeding.

_____
**MARIANNE B. BOWLER**
Chief United States Magistrate Judge