UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>    Plaintiff,                             )<br>                                              )<br>        v.                                    )<br>                                              )<br>ADAM ELLARD, et. al,              )<br>    Defendant.                         )<br>_____ ) | CRIMINAL NO. 04-10168-PBS |

**MEMORANDUM IN SUPPORT OF DEFENDANT
NORMAN BARNES' MOTION TO REOPEN
AND RECONSIDER ORDER ON DETENTION**

This memorandum is in support of the defendant's request that the Court reopen and reconsider its order detaining the defendant prior to trial, pursuant to 18 U.S.C. §3142(f)(last par.), on the ground that new information establishes that there are conditions which will reasonably assure both the defendant's appearance and the safety of the community, thus warranting the defendant's release prior to trial.

**Prior Proceedings**

Defendant was arrested on April 12, 2004 and charged, by complaint, with conspiracy to distribute cocaine base. (Exhibit A). The arrest resulted from an investigation of co-defendant Adam Ellard, in which agents made prior purchases of narcotics from him on March 3 and March 9, 2004. The transaction on April 12, 2004, arranged by Ellard, involved two ounces of a narcotic substance then believed to be crack cocaine.

The detention hearing was conducted on April 26 and 29. The evidence presented by the government consisted of the testimony of DEA Special Agent Steven Story (Exhibit B), his affidavit (Exhibit C), and a copy of a pending state court charge of marijuana distribution against Barnes. Agent Story testified that Ellard arrived at the scene in a Honda Civic driven by

codefendant Hester. The car pulled in along with a Ford Focus driven by codefendant Robinson. Codefendant Tucker was in the front passenger seat, and defendant Barnes in the rear. Ellard interacted with the undercover agent in the agent's vehicle. Ultimately, Robinson placed a package containing drugs on the front seat of the agent's car. (Exhibit B, pp. 10-17).

There was no testimony that defendant Barnes did anything at all.[1] Unlike other codefendants, he did not run away. Nothing was found on his person. There was no evidence that he had anything to do with the previous transactions with Ellard or the with the negotiations leading to this incident. In a later search, two weapons were found in the engine block of the Focus. However, there was no evidence that defendant knew of or was connected to these weapons in any way.

On April 29, the Court found probable cause to believe that defendant "committed the crime as charged in the criminal complaint." (Exhibit D ).

The Court issued its order of detention on May 25, 2004, relying on both danger to the community and risk of flight. (Memorandum and Order on Government's Motion for Detention)("Detention Order")(Exhibit E). As to the first, the Court noted the following:

> The defendant, while on release from two courts, was present at a prearranged drug deal. He arrived in the car that brought the cocaine to the location and was present in the car during conversations leading up to the actual transfer of the cocaine to the UC the car the defendant was traveling in had two loaded firearms concealed under the hood.

---

[1] Story testified that in between interactions with Ellard, Elland went over to the Focus, put his head inside, and engaged in conversation with the occupants. However, it was dark, and Story was 45 to 60 feet away. The Focus was facing him (and thus Barnes was behind the other occupants). He could not see the faces or lips of the occupants – he could see only the right side and back of Ellard and the motion of his head. (Exhibit B, pp. 74-76).

> While the defendant's precise role in the transaction is not clear, it is not the practice of drug dealers to bring innocent spectators along to what was clearly not a casual drug deal but a prearranged "buy" of $2,350 worth of cocaine. The facts suggest that the defendant was a trusted confederate.
>
> The pending Suffolk and Brockton cases strongly suggest that the defendant is unable to stay away from guns and drugs. The facts giving rise to the present charge combine these two elements. It is clear that the defendant is unable to abide by conditions of release to refrain from gun and drug related behavior and therefore he constitutes a danger to the community.

(Detention Order, p. 19).

As for risk of flight, the Court observed that "defendant has been a lifelong resident of the Boston area." However, the Court noted that he had "been living a somewhat itinerant lifestyle," in that he had lived the six months prior in Brockton with his girlfriend, aunt and cousin, and before that "at various addresses in Dorchester and Roxbury with his grandmother." Id. p. 20. The Court noted a "minimal" employment history. The Court also noted that he had "four defaults and two probation violations" in his criminal history, and that he faces charges in Suffolk Superior and Brockton district court, from which he was on release when the instant arrest occurred. "This strongly suggests that the defendant cannot abide by conditions of release and that he cannot be relied upon to appear as required." Id. p. 21.

Defendant has since been indicted, but only for conspiracy to possess and distribute cocaine (Count One), and possession and distribution of cocaine (Count Three). (Exhibit F).

### Argument

18 U.S.C. §3142(f)(last par.) provides, in pertinent part, that:

> [t]he hearing may be reopened, before or after a determination by the judicial order, at any time before trial, if the judicial officer finds that information exists that was not known to the movant at

> the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

There now exists considerable new information which warrants reconsideration of the Court's order and the release of the defendant prior to trial.

### 1. Indictment on Lesser Charges

The detention order was made on the basis of a complaint which then charged the defendant with conspiracy to distribute cocaine base, as well as testimony and an affidavit to the effect that the crime entailed the purchase of two ounces of "crack cocaine" by an undercover agent. (Detention Order, p. 14). Under 21 U.S.C. §841(b)(1)(A)(iii) the defendant faced a ten year minimum mandatory sentence if convicted of the offense. In fact, however, the drug involved in the transaction was cocaine powder, and defendant has now been indicted for conspiracy to distribute cocaine, not cocaine base. Thus, defendant is now facing a far less serious offense -- a factor of enormous significance both for the assessment of dangerousness and the likelihood of appearance. There is no mandatory minimum for defendant's charged offense and the Sentencing Guidelines specify as little as six months, and no more than thirty-three months.[2] The fact that defendant in actuality has a comparatively mild exposure is a highly relevant circumstance in considering what weight to give any presumption based upon the

---

[2] This assumes a "worst case" calculation of Criminal History of Level III. Under USSG §2D1.1, the Base Offense Level for 50 grams of cocaine is 16. Since the defendant is not alleged to have actually done anything at all, he would be entitled, under §3B1.2, to a "minor" or "minimal" role adjustment of from two to four levels. Even if defendant did not receive an adjustment for acceptance of responsibility, his guideline range would be no greater than 27-33 months, at worst. On the other hand, if he received the maximum role adjustment, and an adjustment for acceptance of responsibility, his offense level would reduce to 10, a Zone B level, and his range would be 6 to 12 months, with the possibility of home or community confinement.

charge August 30, 2004. United States v. Moss, 887 F.2d 333 (1st Cir. 1989).

Furthermore, in ordering detention on the basis of the complaint and the probable cause record, the Court was greatly influenced by the government's attempt to connect the defendant to the weapons found under the hood of the car in which he was a passenger, and this contributed to the Court's conclusion that defendant is "unable to refrain from gun . . . related behavior." However, here the proof has likewise turned out to be lacking, as the grand jury has charged only codefendant Robinson with a weapons offense, and has failed to charge the defendant with any involvement with the weapons.

### 2. Pending State Charges.

The Court also placed heavy emphasis on the defendant's two pending state charges. However, the complaint in one -- the Brockton district court marijuana charge -- has now been reduced to simple possession of a Class D substance (marijuana). See Brockton District Court Docket (Exhibit G). This amendment was not as a result of any bargain and made without any change of plea by the defendant, as the evidence would not bear any greater finding.

### 3. Third-party Custodian.

The defendant has also now made arrangements for his aunt, Victoria Madison, to be a third-party custodian. The specific proposal is for him to live at Ms. Madison's home, in Brockton, with her and her family, under conditions of home detention, secured by an electronic bracelet. The Pre-Trial services officer has recommended against this arrangement because, although she "may well be a responsible, hard working citizen," she "not only works full time, but is actively involved in raising six children," and also because the "defendant remains a danger and a flight risk under any conditions." But the fact that Ms. Madison is a hardworking

mother of six supports rather than detracts from her suitability. The proposed arrangement would entail a stable living situation provided by a responsible person. The Court would not have to rely on the full-time supervision by defendant's aunt. Rather, enforcement of the terms of the home detention would be accomplished by electronic bracelet technology. With these conditions in place, defendant would not present any sort of risk.

## Conclusion

For the reasons set forth above, the Court should reopen and reconsider its order of detention, and release the defendant on conditions, prior to trial.

Respectfully submitted,

*/s/ Max D. Stern*
Max D. Stern
BBO No. 479560
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: August 31, 2004

G:\SSWG\BARNES, NORMAN\reconsiderdetentionmemo.wpd

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on this date 8/31/04

*/s/ Max D. Stern*