IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|                              |   |                           |
|------------------------------|---|---------------------------|
| UNITED STATES OF AMERICA     | ) |                           |
|                              | ) | Criminal No. 04-10168-PBS |
| v.                           | ) |                           |
|                              | ) |                           |
| NORMAN BARNES                | ) |                           |
|                              | ) |                           |
| Defendant.                   | ) |                           |
|                              | ) |                           |

### Government's Response to Defendant's
### Motion To Reopen And Reconsider Order of Detention

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and David G. Tobin, Assistant United States Attorney, opposes the Defendant's Motion To Reopen And Reconsider Order On Detention, and submit this memorandum in support of its opposition.

### INTRODUCTION

On April 12, 2004, the defendant, Norman Barnes, and four co-defendants[1], were arrested in Dorchester, Massachusetts immediately following a controlled purchases of cocaine.  A Drug Enforcement Administration ("DEA") special agent ("SA") working in an undercover capacity purchased cocaine from the five defendants in a parking lot adjacent to the Southeast Expressway. On the following day a Criminal Complaint was issued in the District Court charging each of the five defendants with

---

[1]Adam Ellard, Willie Hester, Tavon Robinson, and Steven Tucker.

conspiracy to distribute cocaine base in violation of Title 21, United States Code, Section 846.  At the defendant's initial appearance on April 13, 2004, the government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community and (2) the appearance of the defendant.  18 U.S.C. §§ 3142 (f)(1)(B), (f)(1)(C) and (f)(2)(A).  The defendant's detention and probable cause hearing was held on April 26 and April 29.  The government called DEA SA Steven Story and introduced SA Story's affidavit that had been submitted to the court previously to secure the criminal complaint (detention hearing Exhibit B) and a copy of a pending state court marijuana charge against the defendant (detention hearing Exhibit C).  The defendant, who was represented by counsel, called no witnesses and introduced no exhibits.  At the conclusion of the hearing, the Court made a finding of probable cause as to the defendant and took the issue of detention under advisement.

On May 25, 2004, this Court issued its Memorandum And Order On Government's Motion For Detention.  The Court found "by a preponderance of the evidence that there is no condition or combination of conditions that will assure the appearance of the defendant as required" and "by clear and convincing evidence that there is no condition or combination of conditions that will

assure the safety of any person or the community if the defendant is released." See Memorandum And Order On Government's Motion For Detention, p. 19-21.

During a pre-trial conference before the Court on August 2, 2004, counsel for the defendant requested a hearing to re-address the detention issue. The Court set the hearing for September 2, 2004. The hearing was subsequently re-scheduled for September 9, 2004. On the afternoon of August 31, 2004, the government received the defendant's Memorandum In Support Of Defendant Norman Barnes' Motion To Reopen And Reconsider Order On Detention.

## **ARGUMENT**

18 U.S.C. § 3142(f) provides, in pertinent part, that:

> [t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial, if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of the community."

The defendant contends that there is "considerable new evidence" which warrants reconsideration of the Court's order of detention and the release of the defendant prior to trial. The "considerable new evidence" pointed to by the defendant consists of (1) the defendant's indictment on a charge of conspiracy to distribute cocaine rather than on a charge of conspiracy to

3

distribute cocaine base; (2) a change in the status of the
defendant's a pending state court drug case; and (3) the
availability of a third-party custodian.  Then government argues
that the developments or "changes" cited by the defendant have no
material bearing on the issue of whether there are conditions of
release that will reasonably assure the appearance of the
defendant as required and the safety of any person or the
community.

I.  **Indictment**

The criminal complaint alleged that the defendant, and his
four co-defendants, conspired to distribute cocaine base.  The
indictment charges the defendant, and the four co-defendants,
with conspiracy to distribute cocaine.  The DEA SA working in an
undercover capacity negotiated with co-defendant Adam Ellard over
the telephone for the purchase of "crack" cocaine ("crack" is a
term commonly used to describe cocaine base).  The drugs
purchased on April 12, 2004, from the defendant and co-
defendants, were in an off-white solid form that resembled
cocaine base.  As a result, the criminal complaint alleged a
conspiracy to distribute cocaine base.  Subsequent scientific
testing of the purchased substance revealed it to be powder
cocaine.

Although the criminal complaint alleged a conspiracy to
distribute cocaine base, the evidence presented at the detention

4

hearing cast suspicion on the true nature of the contraband purchased from the defendant and his co-defendants. Exhibit B, SA Story's criminal complaint affidavit contains information that on the morning the defendants were transported to the federal courthouse in Boston for their initial appearance, defendant Robinson was overheard telling defendant Barnes that "it's not crack anyway, it's only coke, they'll see that when they test it at the lab." See detention hearing Exhibit B, p. 8. Moreover, it was clear from SA Story's detention hearing testimony that at the time of the hearing the drugs had been field tested, but not yet sent to a laboratory for conclusive analysis. See detention hearing transcript at p. 25, where SA Story testified the drugs had field tested positive for the presence of hydrochloride.

In light of defendant Robinson's statements that the contraband was cocaine (and not "crack") and in the absence of conclusive laboratory testing, the parties at the time of the detention hearing did not know the true nature of the drug purchased. The fact that today we have scientific confirmation of defendant Robinson's claim that the product was cocaine (and not "crack') is hardly new information warranting a reevaluation of the Court's detention decision.

The defendant argues that his potential sentence of incarceration has been reduced as a result of the change in the charge from conspiracy to distribute cocaine base to conspiracy

to distribute cocaine.  However, there is no indication in the
Court's Memorandum and Order that the length of the defendant's
potential sentence played any significant role in its
determination that defendant was a danger and a flight risk.  It
is hard to imagine how the defendant is any less a danger to
another person or the community because he faces less time in
federal prison.  The reduction in his potential sentence
similarly has little or no effect on whether the defendant can be
relied upon to appear in court.  As the Court noted, the
defendant's criminal history reflects four defaults and two
probation violation.  Moreover, he has "a somewhat itinerant life
style" and a minimal employment history.  The Court also noted
that at the time of his alleged involvement in this case, the
defendant was on release from two separate courts.[2]  See
Memorandum And Order On Government's Motion For Detention, p. 20-
21.

## II.  __DEFENDANT'S PARTICIPATION IN THE CONSPIRACY__

---

[2]  At the time of the present offense the defendant was on
release from the Suffolk Superior Court where he faces serious
charges including assault to kill and possession of a firearm and
ammunition.  The defendant was also on release from the Brockton
District Court where he faces a drug charge.  The drug charge has
been reduced from possession of a controlled substance with
intent to distribute to possession of a controlled substance.
This reduction has no bearing on the issue of the defendant's
dangerousness or risk of flight in light of his criminal record,
his pending case in Suffolk County Superior Court, and the other
factors noted by the Court.

The defendant's counsel argues in his brief that "[t]her was no testimony that defendant Barnes did anything at all."  See defendant's Memorandum, p. 2.  The defendant's counsel fails to mention the substantial evidence contained in SA Story's affidavit pertaining to the defendant's knowledge of and participation in the drug distribution conspiracy.  As recounted in SA Story's affidavit, defendant Ellard, after his arrest, told DEA agents that during the course of the negotiations at the parking lot there was an impasse over the under cover agent's refusal to hand over the money before receiving the drugs.  During Ellard's negotiations with Hester, the drug dealer Ellard contacted to obtain the cocaine for the undercover agent, Hester told Ellard to go over to the other car and speak with the backseat passenger.  The backseat passenger referred to was the defendant.  Ellard further related that he went over to the Ford twice and spoke to the defendant.  Ellard explained that he told Defendant Barnes that he had seen the undercover agent's money, but that the undercover agent did not want to hand over the money until he saw the drugs.  The defendant told Ellard that they were not going to give Ellard the drugs until they had the money.  The evidence strongly suggests that the defendant was not only involved in the drug sale, but was a leader who was consulted when the plans began to go awry.

III. **ADDITIONAL INFORMATION OBTAINED SINCE THE DETENTION HEARING**

During the detention hearing there was evidence that the DEA had determined the identity of the registered owner of the black Honda Civic driven to the scene by defendant Hester, with defendant Ellard in the front passenger seat.  Although SA Story did not know the name of the owner, he did testify that none of the five defendant's owned the black Honda Civic.  See Transcript of the detention hearing, p. 38-39.

Further investigation has revealed that the registered owner of the black Honda Civic is Lloyd Powell of Dorchester, Massachusetts.  Mr. Powell is the father of two of the defendant's siblings and the former romantic companion of the defendant's mother, Sophie Barnes of Brockton, Massachusetts. Mr. Powell was approached by Ms. Barnes and asked to put the Honda in his name.  Ms. Barnes has a bad driving record and in order to save money on her insurance premiums she wanted the vehicle to be registered and insured in Mr. Powell's name.  Mr. Powell, although the car's registered owner, never possessed the car, which remained with Ms. Barnes in Brockton.  Ms. Barnes permitted her son, the defendant, and his friend, defendant Hester, to drive the car.  The defendant had control of the black Honda Civic on the night of the drug transaction.  It was in his car that a handgun was found in a pocket on the back of the front seat.

8

IV. **PROPOSED THIRD-PARTY CUSTODIAN**

The defendant has proposed that his aunt, Victoria Madison, be permitted to serve as his third-party custodian.  Pretrial Services Officer Joshua Ulrich, who interviewed Ms. Madison at the direction of the Court, found her to be an unsuitable candidate to serve as the defendant's third-part custodian.  In addition to her full time job, Ms. Madison is actively involved in raising her six children.  With the demands of full time employment and the responsibility of raising six children ranging in age from nine to fifteen years, Ms. Madison would not have the ability to closely monitor the actions of the defendant.  In his memorandum to the Court reporting on his interview of Ms. Madison, Mr. Ulrich reiterated his opinion that the defendant is a danger and a flight risk.

## CONCLUSION

The government respectfully requests that this Court take no action to reverse its earlier decision to detain the defendant. The government submits that even if this Court concludes that information know exists that was not known to the defendant at the time of the detention hearing, any new information does not have a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community.  The factors cited by this Court in support of detaining the defendant included: (1)

while on release from two courts, the defendant was present at a prearranged drug deal; (2) he arrived in the car that brought the cocaine to the deal; (3) he was present in the car during conversations leading up to the actual transfer of the cocaine; (4) the car the defendant was traveling in had two loaded firearms concealed under the hood; (5) the practice of drug dealers is not to bring innocent spectators to a prearranged drug deal; (6) the defendant's pending criminal cases in two state courts strongly suggest the defendant is unable to stay away from guns and drugs; (7) the defendant's work history is minimal; (8) the defendant's criminal history reveals four defaults and two probation violations; (9) at the time of this incident, the defendant was on release from two courts; and (10) the defendant has serious pending cases, including a Suffolk Superior Court case where he faces charges of assault to kill and gun and ammunition possession.  See Memorandum and Order, p. 18-21.  None of the numerous factors cited by this Court to support the decision to detain the defendant are even remotely affected by the "new evidence" brought to the attention of the Court by the defendant.  The defendant remains a danger to the community and a risk of flight.  The government requests that this court deny the defendant's motion.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:  */s/ David G. Tobin*
     DAVID G. TOBIN
     Assistant U.S. Attorney