# EXHIBIT J

Case 1:04-cr-10168-PBS   Document 116-11   Filed 02/08/2005   Page 1 of 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,　)<br>　　　Plaintiff,　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　v.　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>ADAM ELLARD, et. al,　　　　)<br>　　　Defendant.　　　　　　　　)<br>　　　　　　　　　　　　　　　　) | CRIMINAL NO. 04-10168-PBS |

## AFFIDAVIT OF MAX D. STERN

I, Max D. Stern, hereby depose and say, under the penalties of perjury, as follows:

1. I am the attorney for defendant Norman Barnes.

2. Just prior to December 13, 2004, the date of the defendant's change of plea hearing, I received a telephone call from Assistant United States Attorney David Tobin. He asked me whether Mr. Barnes was willing to stipulate that the drug quantity for which he was accountable was 28.2 grams. If not, Mr. Tobin said, he would have to seek a superseding indictment alleging this amount, and would need to seek a postponement of the plea hearing. I told him that Mr. Barnes would so stipulate.

3. On January 14, 2005 and February 2, 2005, I spoke with Ms. Stephanie Finley, who is on the staff of the Massachusetts Division of Youth Services Legal Office, regarding Mr. Barnes' claim that when committed on the receiving stolen property delinquency finding, he had been told that, but for the outstanding charge of armed robbery, he would have been held for only 30 days, and that when that charge was dismissed, he was then sent home in a few days. Mr. Barnes had been held at the DYS Casa Isla facility.

4. Ms. Finley advised that Casa Isla was a short-term non-treatment facility which was used for three purposes: (1) initial assessment, which generally took approximately 30 days; (2)

pre-trial detention; and (3) stabilization, which constituted short-term (1-7 days) disciplinary detention for violation of conditions of release. Reviewing Mr. Barnes' record, she noted that he was at Casa Isla for initial assessment. Ordinarily, a person such as Barnes, held on a first DYS commitment on a non-serious charge (such as receiving stolen goods) would be discharged to home after the initial assessment, with a release plan. She deduced from the record that Barnes was most probably held for the longer period solely on account of what is termed, in DYS parlance, as an "open bail case," involving the more serious Roxbury charge. Once that was resolved, he would have been released home, after a check on the suitability of the custodian (which would account for the six day delay between dismissal and release).

5. Ms. Finley told me that I could confirm this by contacting Mr. Barnes' case manager, Mr. Ron Pasquale.

6. I did contact Mr. Pasquale and he faxed me his letter of February 3, 2005.

Signed under the penalties of perjury,

*Max D. Stern*
Max D. Stern

Dated: February 8, 2005.

G:\SSWG\BARNES, NORMAN\Affidavit of Max D. Stern.wpd